UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Carlos HERNANDEZ,

                          Petitioner,

              -against-

Roland LARKIN,

                          Respondent.

------------------------------------------------------------X

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE ALISON J. NATHAN:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:__  7/26/2013

12-CV-08090 (AJN)(SN)

**REPORT AND
RECOMMENDATION**

        After a jury trial, petitioner Carlos Hernandez was convicted of Murder in the Second

Degree, N.Y. Penal Law ("Penal Law") § 125.25(1), and sentenced to a prison term of 20 years

to life. His conviction was unanimously affirmed by the Appellate Division of the New York

Supreme Court, First Department (the "Appellate Division"). The New York Court of Appeals

then denied leave to appeal, after which a post-judgment motion and appeal also were denied.

        Hernandez now brings this *pro se* petition for *habeas corpus* pursuant to 28 U.S.C. §

2254, alleging that he is being held in state custody in violation of his federal constitutional

rights. Hernandez asserts that a writ of *habeas corpus* should issue because his trial court

attorney provided ineffective assistance of counsel, the government failed to produce police

notes and documents relating to a government witness, and he was not provided sections of his

trial's *voir dire* minutes.  For reasons explained below, Hernandez's petition for a writ of *habeas

corpus* should be DENIED in its entirety.

## BACKGROUND

Hernandez's *habeas* petition arises from his conviction for the murder of Gilberto de los Santos Vasquez at the La Herradura Social Club (the "Social Club"), then located at 1347 E.L. Grant Highway, Bronx, New York. The following facts are derived from the records of Hernandez's suppression hearing and trial.

### I.      Factual Background

On February 16, 1997, Abigail Cintron received a phone call from de los Santos, asking her to meet him at the Social Club. At around 9:45 p.m., Cintron arrived outside of the Social Club, where she was greeted by de los Santos. After speaking briefly, they went inside. The Social Club was small and approximately twelve people were there at the time. De los Santos introduced Cintron to Pedro Tavares, and they joined him at a table, sitting for a few minutes before de los Santos rose to make a phone call.

Meanwhile, Hernandez, who was sitting at the bar, cracked a bottle and approached Cintron and Tavares. He argued with Tavares for a few minutes saying, according to Cintron, "I told you not to come here, I told you I didn't want to see you here," and warning Tavares not to get involved because Hernandez's dispute was not with him. (Transcript ("T.") at A-439.) According to Cintron, Hernandez appeared to be holding something behind his back. Hernandez left and, approximately five to ten minutes after he had arisen to make a phone call, de los Santos returned to the table. He told Cintron that they had to wait only a few more minutes before they left. Before they could leave, however, Hernandez returned. Standing before de los Santos, who sat beside Cintron at the table, Hernandez said, "What was it that I told you," and de los Santos responded, "Don't start again with all that." (T. at A-443.)

De los Santos tried to stand, but Hernandez pushed him down into his seat. Hernandez then slashed de los Santos in the neck with the broken bottle, cutting his throat in a downward motion. In response, de los Santos placed his hands around his neck but, according to Cintron, when he removed his hands "all the blood started to come out." (T. at A-474.)

Tavares then stood up, and Hernandez slashed him as well. Tavares's wound would require hospitalization. Hernandez was not charged with any crimes against Tavares.

Someone said, Let's go," and pulled Hernandez out. (Id.) De los Santos tried to speak, but could not, walked a few steps and fell onto a chair and then to the floor. Cintron went to de los Santos and tried to stop the bleeding. When the emergency responders arrived, de los Santos was dead, lying in Cintron's lap.

At around 10:05 p.m., Detective Robert Colten arrived at the Social Club with Detective Alberto Rosario. The detectives questioned three or four witnesses. Colten was provided with a nickname and description of the person who had killed de los Santos. At around 10:40 p.m., Detective Maureen McMahon arrived at the Social Club. McMahon recovered a bloody bottle top next to de los Santos's body, which was still wet, as well as some glass that had blood on it.

The case then went "cold" until Colten received new information and Cintron subsequently identified Hernandez on March 20, 2002. On January 22, 2003, the Bronx County Grand Jury indicted Hernandez on charges of Murder in the Second Degree, with intent to cause death, Penal Law § 125.25(1), Murder in the Second Degree, with depraved indifference, Penal Law § 125.25(2), Manslaughter in the First Degree, Penal Law § 125.20, and Criminal Possession of a Weapon in the Fourth Degree, Penal Law § 265.01. On January 29, 2003, Hernandez was arrested.

3

**II.      Additional Conviction**

On October 20, 2000, between de los Santos's death and Hernandez's arrest for his murder, Hernandez pled guilty in New York County Supreme Court to Criminal Possession of a Controlled Substance in the Second Degree, Penal Law § 220.18(1). On November 8, 2000, he was sentenced, pursuant to a plea agreement, to an indeterminate term of four years to life.

**III.     The Suppression Hearing**

On November 1, 2004, Hernandez appeared before the Honorable Harold J. Silverman for a pre-trial Wade and Rodriguez hearing. No suppression hearing objection is raised in this *habeas* petition. On November 8, 2004, the hearing court issued a written decision denying Hernandez's Wade/Rodriguez motion.

**IV.     The Trial**

Hernandez's trial was held before the Honorable Denis J. Boyle, in New York State Supreme Court, Bronx County. The government presented the facts discussed above, including testimony from Cintron, Tavares, McMahon, and Colten. Dr. James Gill, a medical examiner with the City of New York, and an expert in forensic pathology, testified that he had reviewed the autopsy report prepared by Doctor Joseph Cohen. He found that de los Santos had two sharp injuries or cuts on the left side of his neck, which caused fatal injury. The wounds were consistent with having been caused by a sharp object with a curve to it, like a broken bottle. No defensive wounds were present and, according to Dr. Gill, the findings were consistent with de los Santos being stabbed with one quick motion with a broken bottle before he had a chance to defend himself.

Hernandez then presented his defense. The trial judge informed the jury that the parties had stipulated that if Hernandez called Detective Frank Gallipani, an expert in latent fingerprint

comparison, he would have testified that Hernandez's fingerprints did not match those recovered by McMahon at the Social Club on February 16, 1997, and that no usable fingerprints could be lifted from the Old English bottle admitted into evidence by the defense.

The trial judge also informed the jury that if Hernandez had called Johnny Mercado (the Social Club's bouncer) as a witness, he would have testified that he was working the door of the club and saw a "male Dominican" about thirty-eight to forty years old, "200 pounds, dark skin," with an "earring in his left ear." (T. at A-1336.) That individual "hit another guy then he broke a bottle and hit the guy in the neck with the bottle. Another guy tried to hold the guy with the bottle. He was cut, also . . . . The guy who got cut on the neck, he tried to get out, but he fell by the stairs . . . . The guy who did the stabbing ran out and left. I called 911 when the fight started. The owner of the club told me to hurry up, the guy is going to die." (Id.) The parties also stipulated that Mercado did not drink alcohol before the February 16, 1997 incident, and that on October 27, 2004, Mercado viewed a photo array and made no identification.

On April 6, 2005, a jury convicted Hernandez of Murder in the Second Degree and sentenced him to a prison term of 20 years to life.

**V.      Hernandez's Direct Appeal**

Hernandez appealed his case to the Appellate Division. Through counsel he claimed that: (1) the transcript of jury selection was incomplete and he should be allowed, if necessary, to supplement his brief as to any jury selection issues once it was completed; (2) the court erred in failing to conduct a Rodriguez hearing before the testimony of two witnesses; (3) the court should have charged the lesser included crime of Manslaughter in the Second Degree; (4) the failure to produce police notes of the witnesses' statements prejudiced Hernandez; and (5) the jury verdict was influenced by inappropriate prosecutorial commentary throughout the trial. In a

*pro se* supplemental brief, Hernandez reiterated points (1) and (3) above and raised two additional claims: (i) the verdict was against the weight of evidence because there was no evidence presented of an intent to murder; and (ii) Hernandez's counsel was ineffective for failing to be aware of the law of lesser included offenses and failing to request an intoxication charge.

On January 27, 2011, the Appellate Division unanimously affirmed Hernandez's conviction. See People v. Hernandez, 915 N.Y.S.2d 76 (1st Dep't 2011). First, the Appellate Division found that Hernandez "expressly waived any claim that the court should have submitted manslaughter in the second degree as a lesser included offense." The court also rejected that claim "on the merits, since there [was] no reasonable view of the evidence that [Hernandez] recklessly caused his victim's death." Id. Second, the Appellate Division affirmed the adverse inference charge to the jury as a sufficient curative and rejected the constitutional claims with respect to Hernandez's argument that the nondisclosure of federal transcripts relating to a prosecution witness unfairly prejudiced his counsel's cross-examination. Id. Third, to the extent that the record permitted review of Hernandez's claims of ineffective assistance of counsel, the court found that Hernandez received effective assistance under state and federal law. Id. Fourth, the court rejected Hernandez's averment "relating to allegedly missing or unavailable transcripts of jury selection." Id.

By *pro se* letter dated February 16, 2011, and through counseled letter dated February 25, 2011, Hernandez applied for leave to appeal that decision to the New York Court of Appeals. In an order dated April 14, 2011, the New York Court of Appeals denied Hernandez's application. People v. Hernandez, 947 N.E.2d 1200 (N.Y. 2011) (table).

By *pro se* motion papers dated July 1, 2011, and pursuant to N.Y. Crim. Proc. Law. ("C.P.L.") § 440.10, Hernandez moved to vacate his judgment of conviction, claiming that trial counsel was ineffective for, *inter alia*: (1) failing to inform him of whether the plea offer would run concurrent with, or consecutive to, his narcotics possession sentence; (2) not knowing the law on lesser-included offenses; and (3) failing to seek an intoxication charge. On March 30, 2012, Justice Boyle denied Hernandez's post-judgment motion. On April 24, 2012, pursuant to C.P.L. § 460.15, Hernandez filed a *pro se* application to the Appellate Division for leave to appeal the denial of his motion. The Appellate Division denied Hernandez's application on September 25, 2012.

## VI.   Hernandez's Federal *Habeas Corpus* Petition

On November 7, 2012, Hernandez filed this *pro se* petition for writ of *habeas corpus*. On December 6, 2012, his petition was referred to a magistrate judge for a report and recommendation. On December 10, 2012, that referral was reassigned to my docket. On March 28, 2013, respondent filed his answer. On April 17, 2013, petitioner filed his reply, and the petition became fully briefed.

## DISCUSSION

## I.   Timeliness

Hernandez's *habeas corpus* petition was timely filed. The Antiterrorism and Effective Death Penalty Act (the "AEDPA") requires a state prisoner whose conviction has become final to seek federal *habeas corpus* relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year period serves the "well-recognized interest in the finality of state court judgments." Duncan v. Walker, 533 U.S. 167, 179 (2001). A petitioner's judgment becomes final 90 days from the date the New York State Court of Appeals denies leave to appeal – *i.e.*, after the "period to petition

7

for a writ of *certiorari* to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190, 1195 & n.1 (2002).

The AEDPA tolls the one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." Evans v. Chavis, 546 U.S. 189, 191 (2006) (emphasis in original) (citing Carey v. Saffold, 536 U.S. 214 (2002)).

Here, Hernandez was convicted on April 6, 2005, and his conviction became final on July 13, 2011 – 90 days after the Court of Appeals denied leave to appeal. On July 1, 2011 – before his conviction became final – Hernandez moved to vacate the judgment. That motion was denied and, on September 25, 2012, the Appellate Division denied Hernandez's application for leave to appeal. His petition is dated November 1, 2012, and was docketed on November 7, 2012. Because Hernandez's petition was filed within the one-year limitation period, accounting for all proper tolling, it is timely.

## II.  Exhaustion

### A.  Statement of Law

Before a federal court may review a petition for writ *habeas corpus*, a petitioner must exhaust his remedies in state court. To exhaust a claim, a petitioner must "invoke[] one complete round of the State's established appellate review process" before bringing the same claim in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State,

8

. . . if he has the right under the law of the State to raise, by any available procedure, the question presented."); Baldwin v. Reese, 541 U.S. 27, 31 (2004). This "exhaustion requirement" is rooted in a "policy of federal-state comity," Picard v. Connor, 404 U.S. 270, 275 (1971), "protect[s] the state courts' role in the enforcement of federal law[,] and prevent[s] the disruption of state judicial proceedings," Rose v. Lundy, 455 U.S. 509, 518 (1982). It ensures that state courts are given "a full and fair opportunity to resolve federal constitutional claims" before the claims are presented to federal courts. O'Sullivan, 526 U.S. at 845; Duncan v. Henry, 513 U.S. 364, 366 (1995).

To "properly exhaust[]" a claim, a petitioner must "fairly present[]" his claim in state court by alerting the state court of the federal nature of his claim using constitutional language. O'Sullivan, 526 U.S. at 848; Baldwin, 541 U.S. at 32 (finding inadequate exhaustion where state court would have to look to the record, beyond the petition or brief, to be aware of federal claim). A petitioner may not rely solely on general principles of fairness, and instead must refer to specific constitutional provisions or concepts. Compare France v. LeFevre, 83 Civ. 03829 (CSH), 1985 WL 503, at *2 (S.D.N.Y. Mar. 29, 1985) (reference to the right to "due process" or a "fair trial" is not alone sufficient to alert the state courts to the federal nature of a claim) with De La Cruz v. Kelly, 648 F. Supp. 884, 888 (S.D.N.Y. 1986) (finding that petitioner alerted the state court of the constitutional aspect of his claims when he argued that the challenged ruling denied him a fair trial and cited the Fourteenth Amendment). The legal doctrine asserted in the state courts does not need to be identical to that raised in the *habeas* petition, but the "nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye v. Att'y Gen. of New York, 696 F.2d 186, 192 (2d Cir. 1982).

The Court of Appeals for the Second Circuit applies the "fair presentation" standard liberally, allowing that a state court may be deemed to be on notice of the constitutional nature of a claim even if the petitioner did not specifically quote the United States Constitution. Notice will be found when the appellate brief shows "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Ramirez v. Att'y Gen. of New York, 280 F.3d 87, 95 (2d Cir. 2001) (citing Daye, 696 F.2d at 194). This position protects petitioners who rely on constitutional principles without citing "book and verse on the federal constitution," while ensuring that state courts have the opportunity to "pass upon and correct" alleged violations of federal rights. Picard, 404 U.S. at 275, 278 (citations omitted).

**B. Hernandez's Claims**

Hernandez fairly presented his federal constitutional claims to the highest state courts that could hear them. His *habeas* claims, therefore, are exhausted.

Respondent argues that Hernandez's claim of a right to meaningful appeal of his conviction is unexhausted. But Hernandez filed his *pro se* supplemental brief with a subheading stating that his claim was being made under the 5th and 14th Amendments to the United States Constitution. Hernandez, therefore, raised his claim in constitutional terms before the Appellate Court. See Matusiak v. Kelly, 786 F.2d 536, 542-43 (2d Cir. 1986) (finding that petitioner had exhausted claim, *inter alia*, when argument heading in his brief to Appellate Division cited Fourteenth Amendment); De La Cruz, 648 F. Supp. at 888 (holding that petitioner alerted state court to constitutional aspect of claims when he argued that challenged ruling denied him a fair

10

trial and cited Fourteenth Amendment); see also Daye, 696 F.2d at 192 ("Obviously if the

petitioner has cited the state courts to the specific provision of the Constitution relied on in his

*habeas* petition, he will have fairly presented his legal basis to the state courts."); cf. Hernandez,

915 N.Y.S.2d at 77 (while denying Hernandez's appeal, the Appellate Division summarily

"reject[ed] the claims made in both the main and *pro se* briefs relating to allegedly missing or

unavailable transcripts of jury selection" but did not mention a failure to exhaust as a ground for

dismissal). Accordingly, this claim also is exhausted.

**III.    Merits Review**

**A.  Standard of Review**

After exhaustion, but before a federal court can issue a writ of *habeas* corpus, a petition

must satisfy a "difficult to meet[] . . . and highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v.

Pinholster, 131 S. Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). Under

the AEDPA, *habeas* relief may be granted only when the state court's decision:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law "if the state court

'applied a rule that contradicts' that precedent, or reached a different result than the Supreme

Court on facts that are 'materially indistinguishable.'" Mannix v. Phillips, 619 F.3d 187, 195 (2d

Cir. 2010) (internal alterations omitted) (quoting Williams v. Taylor, 529 U.S. 362, 405-06

(2000)). As long as the state court decision applied the correct legal rule to the facts of a

petitioner's case, it is not subject to *habeas* review, even if the federal court would have reached a different conclusion if it were to apply the rule itself. Williams, 529 U.S. at 406.

A state court decision involves an "unreasonable application" of clearly established federal law if the court identified the legal rule set forth in governing Supreme Court cases, but unreasonably applied the rule to the facts of the case. Id. at 407-08. A federal court may grant *habeas* relief only when the state court decision, as it pertains to any issue of federal law, was "objectively unreasonable" in light of relevant precedent; thus, in construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive *habeas* review. Id. at 409-13; see also Besser v. Walsh, 601 F.3d 163, 178 (2d Cir. 2010) ("The proper inquiry is not whether a state court's application of, or refusal to extend, the governing law was erroneous, but whether it was 'objectively unreasonable.'" (quoting Williams, 529 U.S. at 409-10)). For federal *habeas* review, factual determinations made by a state court are presumed correct, and a petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Federal courts are required to construe *pro se* litigants' *habeas* petitions liberally. See Roldan v. Racette, 984 F.2d 85, 87 (2d Cir. 1993); see also Haines v. Kerner, 404 U.S. 519, 520–21 (1972). Read liberally, Hernandez makes three arguments. First, he claims that his trial counsel was ineffective. Second, he claims that the government's failure to produce certain police notes and federal plea and sentencing transcripts relating to a prosecution witness violated the principles articulated in People v. Rosario, 173 N.E.2d 881 (N.Y. 1961), and Brady v. Maryland, 373 U.S. 83 (1963). And third, he claims he was denied a meaningful appeal because he did not receive a portion of his trial's *voir dire* minutes and, therefore, could not raise claims relevant to jury selection.

12

### B.  Ineffective Assistance of Counsel

Hernandez points to three instances that, he argues, establish his counsel's ineffective assistance. First, his counsel failed to explain whether the sentence discussed during plea negotiations would run concurrently with an indeterminate life sentence he was serving for unrelated drug charges. Second, his counsel impermissibly failed to seek an intoxication defense. Third, his counsel was unaware that second-degree manslaughter is a lesser-included offense to second-degree murder. These arguments are unavailing.

#### 1.  Statement of Law

Defendants have a Sixth Amendment right to counsel. For the purposes of *habeas* review, Strickland v. Washington, 466 U.S. 668 (1984), is the relevant "clearly established Federal law" in an ineffective assistance of counsel claim. 28 U.S.C. § 2254(d)(1); Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006). A petitioner is not, however, required to show that the particular theory of ineffective assistance of counsel also is "clearly established." Aparicio v. Artuz, 269 F.3d 78, 95 n.8 (2d Cir. 2001).

Evaluation of an ineffective assistance claim on *habeas* review is rooted in the two-pronged test articulated in Strickland. See Harrington,131 S. Ct. at 785 (in a *habeas* petition based on ineffective assistance of counsel, the federal court reviews whether state court decision "involved an unreasonable application of" Strickland). The first prong considers whether counsel's performance was objectively unreasonable, maintaining that any errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Thus, "strategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable." Id. at 690; see Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (there is a "strong presumption" that

counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect"); Michel v. Louisiana, 350 U.S. 91, 101 (1955) (when reviewing a *habeas* petitioner's claim of ineffective assistance, counsel's conduct is presumptively "sound trial strategy"); Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." (citations and internal quotations marks omitted)). The petitioner has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

Under the second prong, the petitioner must establish prejudice, which means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S. Ct. at 787-88 (quoting Strickland, 446 U.S. at 693, 687).

Both prongs are necessary to meeting the petitioner's burden. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

"Surmounting Strickland's high bar is never an easy task." Harrington, 131 S. Ct. at 778 (citation omitted). Rigorous and "highly deferential," Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), the Strickland standard seeks to avoid the lessons of hindsight, Strickland, 466 U.S. at 689. Analysis of an ineffective assistance claim focuses on the fundamental fairness of the trial and asks whether a breakdown of the adversarial process occurred, rendering the result "unreliable." Strickland, 466 U.S. at 696.

14

A petitioner who brings a *habeas* claim based on ineffective assistance of counsel has a higher burden than a defendant on direct appeal raising those same claims. Harrington, 131 S. Ct. at 785. "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Id; Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (an objectively unreasonable application involves "[s]ome increment of incorrectness beyond error" (citation omitted)). Indeed, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. at 788; see Knowles v. Mirzayance, 556 U.S. 111, 112, 124 (2009) (when the "highly deferential" standards created by Strickland and § 2254(d) are applied in tandem, the review is "doubly" deferential). Under this highly deferential standard, federal *habeas* relief is precluded if "fairminded jurists could disagree" on the correctness of the state court's decision. Harrington, 131 S. Ct. at 786.

### 2.  Application of Strickland to AEDPA's Deferential Review

After holding that the ineffective assistance of counsel claims were unreviewable on direct appeal, the Appellate Division nonetheless found that "to the extent [they] permit[] review . . . [Hernandez] received effective assistance under the state and federal standards." Hernandez, 915 N.Y.S.2d at 77 (citing People v. Benevento, 697 N.E.2d 584 (N.Y. 1998), and Strickland, 466 U.S. 668). Hernandez concedes, as he must, that the state court applied the correct legal rule for ineffective assistance of counsel. Because the rejection of Hernandez's claims did not involve an unreasonable application of that rule or an unreasonable determination of the facts, Hernandez's request for *habeas* relief must be denied. Hernandez's individual arguments do not establish that his trial attorney provided constitutionally ineffective assistance.

### a. Plea Negotiations

Hernandez first argues that his counsel was ineffective by failing to tell him whether his sentence under the government's offered plea would run concurrent with, or consecutive to, the sentence he was serving on an unrelated narcotics conviction. In the alternative, twice he states that his counsel told him that the sentences would run consecutively if he was convicted.[1] But Justice Boyle found that Hernandez's "contention that he would have taken the plea offer, had he known that a sentence on the instant case could or would have been concurrent with his prior undischarged term of imprisonment, rest[ed] only on speculation." (Respondent's Answer in Opposition to Petition for *Habeas Corpus* ("Resp. Decl.") Ex. 11 ("Boyle Post-Conviction Opinion") at 7-8.) Hernandez provided only "self-serving and belated assertions, [and] offer[ed] no further support for his contentions." (Id.) Before conviction, Hernandez failed to allege or establish that he actually raised this issue with counsel. (Id. at 7.) Moreover, Hernandez's contention that a negotiated reduced charge "'would or could' have been concurrent rest[ed], essentially, on speculation because the assistant district attorney would have had the authority to fashion a proposed plea to a manslaughter charge as requiring consecutive time and, even if left to the discretion of the court, the court would have had the authority to impose consecutive time had it deemed consecutive time appropriate in the context of a plea agreement to a substantially reduced charge." (Id.) Thus, Hernandez had "clearly failed to show that his trial counsel's representation was ineffective or that he was prejudiced in any way by such representation." (Id. at 8.)

---

[1] It is not entirely clear whether Hernandez's argument is that his counsel misstated the facts or that his counsel failed to discuss the issue: excepting those two citations, his petition, reply and appellate briefs (to which he requests the Court refer) assert that his counsel was ineffective for failing to discuss the issue. (This is a theory seemingly contradicted if counsel made the affirmative misrepresentation that Hernandez's sentences would be imposed consecutively.)

Justice Boyle's determination did not involve an unreasonable application of Strickland or an unreasonable determination of the facts. "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)); accord Purdy v. United States, 208 F.3d 41, 44-45 (2d Cir. 2000) ("[D]efense counsel 'must give the client the benefit of counsel's professional advice on th[e] crucial decision' of whether to plead guilty." (quoting Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996) (additional internal quotation marks and citations omitted))). Thus, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012).

"If a plea bargain has been offered, a defendant [also] has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387. "As part of this advice, counsel must communicate to the defendant the terms of the plea offer, . . . and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy, 208 F.3d at 45 (citations omitted). But "the ultimate decision whether to plead guilty must be made by the defendant," and "a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." Id. The Court of Appeals for the Second Circuit has held that "[c]ounsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." Id.

17

Here, the government offered Hernandez a plea to Manslaughter in the First Degree and a sentence in the 12 to 13 year range. Counsel conveyed the government's offer to Hernandez. And the plea offer was verified in open court:

> [Defense Counsel]: Judge, I appreciate the courtesy of the Court and of the People in extending to me an[] extended period of time for which I could have conversations with my client relative to a proposed possible disposition of 12 years. I believe that the plea would have been on a Man 1 coming off of the Murder 2. I have conveyed that to Mr. Hernandez and I have also relayed – I have made him known what my position is. And I think that the advice that I have given him is based upon what I consider to be a seasoned, well-reasoned objective analysis of both the [strengths] and the pitfalls that support the particular position being advanced here.
>
> Mr. Hernandez's decision, if I understand it correctly, is that he wishes to go forward and continue to this particular trial. Is that correct, Mr. Hernandez?
>
> [Hernandez]: Yes.
>
> [Defense Counsel]: And I ask the Court to make inquiry of Mr. Hernandez whether or not he has understood everything that I have explained to him so that way there is no subsequent issue in the event that there is another court that has to review this particular record.

(T. at A-1146-47.) After this exchange, counsel and Justice Boyle conferred, and Justice Boyle then addressed Hernandez to confirm that he understood the plea offer. Justice Boyle also counseled Hernandez that:

> Sir, if you're thinking that but for perhaps two years you would take the plea, I'm going to seriously suggest that you consider at least three things. One is that you don't actually serve every month of a specific sentence and by law, a percentage of the time that you're sentenced to is not actually served. And I will give you the time to discuss the formulation with your attorney. But by virtue of that law, and as a practical matter, a 12 year sentence, for example, doesn't mean that you'd be in jail for 12 years. In fact, it would be significantly less.

(T. at A-1152.)

Thus, Hernandez was offered a plea, it was adequately explained to him, and counsel discussed the offer with Hernandez, weighing its positives and negatives. Counsel and Justice

Boyle then took further steps to ensure that Hernandez's informed rejection was based on full comprehension of relevant factors. He cannot interject now that he would have taken the plea then if he had known whether his sentences would be concurrent or, in the alternative, if his counsel had not told him his sentences would be consecutive. Accordingly, Hernandez's first claim that his counsel provided ineffective assistance must be rejected.

In reply, Hernandez, makes three additional arguments for why his counsel was ineffective. First, he argues that the state court unreasonably applied Strickland. But he has not shown that his trial counsel's "failure" to inform him about an issue that Hernandez never mentioned was objectively unreasonable. Indeed, it is not. See Larweth v. Conway, 493 F. Supp. 2d 662, 671-72 (W.D.N.Y. 2007) (finding petitioner had "not met the rigorous standard . . . of demonstrating that defense counsel's failure to inform [petitioner] of the period of post-release supervision was objectively unreasonable" when petitioner provided no support for claim but "conclusory, self-serving statements").

Hernandez also has not shown that he was prejudiced by his ignorance of an answer to a question he never asked. A self-serving post-conviction statement does not, standing alone, establish prejudice. See Brizard v. United States, 11 Civ. 06033 (JGK), 2013 WL 1809636, at *5 (S.D.N.Y. Apr. 30, 2013) (finding, pursuant to 28 U.S.C. § 2255, that ineffective assistance of counsel claim was not established when "there [was] nothing beyond [a] conclusory statement to support [petitioner's] claim"); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations . . . is subject to summary dismissal."); Gonzalez v. United States, __F.3d__, 10-3630-pr, 2013 WL 3455501, at *12 (2d Cir. July 10, 2013) (finding, pursuant to 28 U.S.C. § 2255 challenge to guilty plea, that "[s]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal,

19

as are contentions that in the face of the record are wholly incredible" (citation omitted)); Brown v. United States, 637 F. Supp. 2d 212, 223 (S.D.N.Y. 2009) (finding that § 2255 petitioner's "claims of ineffective assistance of counsel in connection with his guilty plea are conclusory, contradicted by the record, unsupported by evidence and therefore are meritless." (collecting cases)). This is especially true when Hernandez stated in open court that he understood the offered plea. See Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."); Padilla v. Keane, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) ("Where a defendant . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on *habeas* review may rely on the defendant's sworn statements and hold him to them." (citation omitted)).

Hernandez references three cases in an attempt to bolster his argument that Strickland was unreasonably applied. He cites to Lafler, 132 S. Ct. 1376, and Frye, 132 S. Ct. 1399, "because having recognized the Supreme Court standard in Lafler, the state court still found that it was Hernandez's responsibility, not his attorney, [to] communicate to the court, prosecutor, and counsel what the terms of his sentence should be." (Petitioner's Affirmation ("Pet. Aff.") at ¶ 4.) He cites to Von Molte v. Gillies, 332 U.S. 708, 721 (1948), to argue counsel was required to discuss how the time would run in order for Hernandez to make an informed decision as to whether he should take the plea. These cases are unavailing.

In Frye, defense counsel failed to inform defendant of a plea offer, and defendant then pled guilty on worse terms. In Lafler, a favorable plea was reported to defendant, but he rejected it on prejudicial advice from counsel and then received a harsher sentence. To contrast, here counsel conveyed the plea to Hernandez but never advised him to reject it. Indeed, both counsel

20

and the court seemed to suggest that Hernandez should take the plea. Hernandez's alternative allegation that his counsel told him the sentences would run concurrently if convicted, and Hernandez therefore rejected the plea, moves his case closer to Lafler. But unlike Lafler, where all sides conceded counsel's deficient performance, here it is not self-evident that his counsel's advice was deficient within the meaning of Strickland. See also Lafler, 132 S. Ct. at 1391 (noting that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance").

In Gillies, the Supreme Court held that "[p]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." 332 U.S. at 721 (finding "[a] waiver of the constitutional right to the assistance of counsel is of no less moment to an accused who must decide whether to plead guilty than to an accused who stands trial." (citation omitted)). Here, Hernandez's counsel stated in open court that he had conveyed to Hernandez his advice, based on "a seasoned, well-reasoned objective analysis of both the [strengths] and the pitfalls that support the particular position." (T. at A-1147.) And unlike Gillies, where "undisputed evidence" established that "petitioner was concerned about many . . . [unanswered] legal questions," here Hernandez only evinced concern over concurrent sentences after his conviction. 332 U.S. at 722.

Second, Hernandez argues that he should not be penalized for failing to request that the sentences would run concurrently. This misrepresents the reviewing court's decision. Hernandez was not required to request concurrent sentences. Rather, the court found that if Hernandez was concerned with concurrent sentences, then he would have raised the issue with counsel – and he did not.

Third, Hernandez argues that he did not ask about concurrent sentences because he is a non-English speaker who required an interpreter. But Hernandez was provided an interpreter. And there is no evidence that he failed to understand the proceedings or was prevented from communicating with his lawyer or the state court.

### b. Intoxication Defense

Hernandez next argues that his counsel was ineffective for failing to request an intoxication charge to the jury. But the state court's rejection of this argument was not an unreasonable application of Strickland. Accordingly, this argument too must fail.

Justice Boyle found that counsel had sound strategic reasons for declining to pursue an intoxication defense: he instead favored a defense that Hernandez was not present at the Social Club on the night of the murder. This choice was not objectively unreasonable. See Mattia v. Fisher, 07 Civ. 00899 (CBA)(JA), 2009 WL 3762301, at *6 (E.D.N.Y. Nov. 10, 2009) ("It was not constitutionally ineffective for counsel to refrain from requesting an intoxication charge where counsel made the reasonable strategic decision to defend the case, not on lack of intent, but on [petitioner]'s claim that he was not a participant in the offense."); see also Haynes v. Ercole, 08 Civ. 03643 (JFB), 2011 WL 2341277, at *26 (E.D.N.Y. June 8, 2011) (finding that state court correctly found it was a reasonable trial strategy for petitioner's trial counsel not to rely on intoxication as defense); Lebron v. McGinnis, 05 Civ. 01370 (TJM)(DRH), 2010 WL 2652223, at *3 (N.D.N.Y. Apr. 1, 2010) (finding defense's decision not to request intoxication charge was reasonable).

Justice Boyle also found that Hernandez was not prejudiced by his counsel's decision to favor a strong defense over a defense that "was weak at best." (Boyle Post-Conviction Opinion at 9-10 (discussing that the "Appellate Division held . . . that there was no reasonable view of the

22

evidence at trial that defendant had recklessly caused the death of the decedent").); see Hill v.

Lockhart, 474 U.S. 52, 58 (1985); Panuccio v. Kelly, 927 F.2d 106, 109-10 (2d Cir. 1991).

Similarly, it is reasonable for counsel to decide that an intoxication defense should not be raised

at trial after concluding that it has little chance of success. See Swail v. Hunt, 742 F. Supp. 2d

352, 366 (W.D.N.Y. 2010) (Petitioner had "not established that he had a colorable defense of

intoxication, and so he could not have been prejudiced by trial counsel's failure to raise this

issue. Furthermore, it was not unreasonable for trial counsel to fail to raise a . . . defense that had

no realistic likelihood of success."); Balance-Soler v. Poole, 04 Civ. 00208, 2005 WL 1579789,

at *5 (W.D.N.Y. June 24, 2005) ("As for the prejudice prong of Strickland, petitioner has not

established that he would have received better treatment had an intoxication defense been raised

and charged to the jury."); see also Burgos-Santos v. Greene, 05 Civ. 03736 (PKC)(RLE), 2009

WL 1916376, at *11 (S.D.N.Y. Mar. 23, 2009) (finding, "[m]oreover, [that] even if the Court

were to find that counsel abandoned the intoxication defense, [petitioner] cannot demonstrate

prejudice" (citations omitted)), adopted by 2009 WL 1916381 (S.D.N.Y. July 1, 2009).

In reply Hernandez does not attempt to surmount Strickland. Rather, he argues that his

defense was predicated on the theory that he did not intend to commit murder because he was

intoxicated. But as the Appellate Division and Justice Boyle made clear, Hernandez's actual

defense at trial was that he was elsewhere when the crime occurred. The Sixth Amendment does

not require that counsel request a jury instruction for a theory he did not present, when counsel

reasonably focused on an alternative strategy.

### c.  Lesser-Included Offense

Hernandez argues, finally, that his counsel was ineffective for failing to know that

Manslaughter in the Second Degree is a lesser included offense under Murder in the Second

Degree. See Penal Law § 125.15 ("A person is guilty of manslaughter in the second degree when

. . . [h]e recklessly causes the death of another person . . . ."). But the state court's rejection of

this argument was not an unreasonable application of Strickland. Accordingly, this final

argument also must fail.

Justice Boyle found that Hernandez's "argument [was] clearly belied by the trial record

which reflect[ed] both that counsel did understand that Manslaughter in the Second Degree is a

potential lesser included offense under the intentional murder count with which [Hernandez] was

charged and that counsel had determined that he would not request such a charge for sound

strategic reasons based upon the defense asserted at trial [that Hernandez was not present at the

Social Club]." (See Boyle Post-Conviction Opinion at 8-9 (also citing Appellate Division

opinion that held that there was "no reasonable view of the evidence that defendant recklessly

caused his victim's death")).

This choice was not objectively unreasonable – especially in light of the presumption that

counsel makes reasonable strategic decisions. See Ramdeo v. Phillips, 04 Civ. 01157

(SLT)(RLM), 2007 WL 1989469, at *34 (E.D.N.Y. July 9, 2007) (finding that"[t]rial counsel's

decision not to request a charge on manslaughter in the second degree was . . . a strategic one, . .

. [and] cannot provide a basis for claiming ineffective assistance of counsel"); see also United

States ex rel. Johnson v. Vincent, 507 F.2d 1309, 1312 & n.7 (2d Cir. 1974) (finding failure to

request charges on possible lesser included offenses may be proper trial strategy); Rios v. United

States, 91 Civ. 04384 (CPS), 1992 WL 328931, at *6 (E.D.N.Y. Oct. 13, 1992) (finding that

"[c]ourts have declined to find ineffective assistance of counsel where counsel pursues an

exculpatory defense although such a choice practically precludes a request for an instruction on a

lesser included offense" (citations omitted)); Colon v. Smith, 723 F. Supp. 1003, 1008 (S.D.N.Y.

1989) ("A failure to request charges on all possible lesser included offenses may be proper trial strategy." (citations omitted)).

Indeed, courts afford "substantial deference" to a counsel's "tactical decision" that he would not request a lesser included offense charge, and that introducing such a lesser included offense might be "contrary to the client's best interests." Rios, 1992 WL 328931, at *7. Should counsel have "pursued the argument that [Hernandez] might have been guilty only of manslaughter, [moreover,] he [c]ould have 'severely undermine[d] his basic argument that [Hernandez] should not be found guilty of any crime." Samuels v. Bennett, 03 Civ. 02340 (BSJ)(FM), 2009 WL 2516850, at *24 (S.D.N.Y. Aug. 17, 2009) (quoting Domingo v. Greiner, 99 Civ. 01906 (JSM), 2002 WL 362761, at *2 (S.D.N.Y. Mar. 5, 2002)); see also Prescott v. Lee, 11 Civ. 00482 (ARR), 2013 WL 1192784, at *12 (E.D.N.Y. Mar. 22, 2013) (finding "even though counsel opted for the alibi [defense] based on a misunderstanding of law, the choice to advance that theory in summation to the exclusion of arguments on intoxication and first-degree manslaughter was not objectively unreasonable").

In reply, Hernandez argues that his counsel's performance was unreasonable because counsel intended to seek a manslaughter instruction but then withdrew the request because of arguments made by the prosecutor and the court. As shown by the record, Hernandez's counsel initially requested a Manslaughter in the Second Degree charge, but the government opposed it, and his counsel withdrew the request. The transcript clearly could be read to show that counsel's choice to withdraw his request was the product of a strategic calculation. (T. at A-1369 (Court: "You don't want man two[?]" Hernandez's Counsel: "I thought about it and I believe that it is either murder or man or nothing so giving them an additional out, I don't think it is consistent with the position that I have advanced at this particular trial. So I don't want to confuse them and

25

I don't want them thinking that I am conceding any material fact in this particular case, so no.")
Hernandez cannot "[s]urmount[] Strickland's high bar" when "there is any reasonable argument
that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788; see Wood
v. Allen, 558 U.S. 290, 301-02 (2010) (finding no ineffective assistance when "state-court record
can fairly be read to support" state court's "factual determination that counsel's failure to pursue
or present evidence of [defendant's] mental deficiencies was not mere oversight or neglect but
was instead the result of a deliberate decision to focus on other defenses").

In any event, Hernandez cannot establish prejudice. The Appellate Division found there
was "no reasonable view of the evidence that defendant recklessly caused his victim's death."
See Hernandez, 915 N.Y.S.2d at 77. Even if Hernandez is correct that his counsel was pressured
into withdrawing his request for a Manslaughter charge, or even became confused, he has not
argued (and cannot show) that this charge would have changed the outcome of his case. He has
not even suggested a plausible answer to why Justice Boyle would grant a jury instruction
request on a charge that he viewed to be without merit.

### d.  **Sparman** Hearing

As a related argument, Hernandez asserts that his ineffective assistance of counsel claims
cannot be decided without a Sparman hearing. In Sparman v. Edwards, 154 F.3d 51 (2d Cir.
1998) (*per curiam*), the Court of Appeals for the Second Circuit instructed that courts should
"offer the assertedly ineffective attorney an opportunity to be heard and present evidence" in
*habeas* cases. Id. at 52. A Sparman hearing is necessary before a court grants a petition for
*habeas* relief based upon ineffective counsel, but not before a court denies such a claim. Because
Hernandez's ineffective assistance of counsel claims provide no basis for *habeas* relief, and
should be dismissed in their entirety, his request for a hearing pursuant to Sparman also should

be denied. See, e.g., McCullen v. Lempke, 10 Civ. 0389T, 2011 WL 4074450, at *11 n.6

(W.D.N.Y. Sept. 13, 2011); Jones v. Donnelly, 487 F. Supp. 2d 418, 420 (S.D.N.Y. 2007);

Jolaoso v. United States, 142 F. Supp. 2d 306, 308 n.2 (E.D.N.Y. 2001).

### C.  Production of Notes and Transcripts

Hernandez next argues that the government violated Rosario, 173 N.E.2d 881, and Brady,

373 U.S. 83, when it failed to produce police notes containing witness statements and minutes

documenting the disposition Tavares negotiated in connection with an unrelated deportation

proceeding in Massachusetts.

### 1.  Rosario Claim

The Rosario rule, codified at C.P.L. § 240.75, "requires generally that the [government]

provide defense counsel with all pretrial statements of prosecution witnesses." People v.

Ranghelle, 503 N.E.2d 1011 (N.Y. 1986); see Rosario, 173 N.E.2d 881. When such statements

are lost or destroyed and a defendant is potentially prejudiced, a trial court should impose an

appropriate sanction to eliminate prejudice to the defendant. See People v. Martinez, 524 N.E.2d

134 (N.Y. 1988). Here, to eliminate prejudice to Hernandez regarding lost notes from two

testifying detectives who had since retired, the trial court permitted the jury to infer that the lost

notes would have been at variance with or inconsistent with the trial testimony of the detectives.

On appeal, the Appellate Division affirmed this as a suitable remedy. Hernandez, 916 N.Y.S.2d

at 77.

Hernandez is precluded from challenging the Appellate Division's ruling on *habeas*

review. The obligation to disclose Rosario material arises solely under state law and thus is not a

basis for federal *habeas* relief. Landy v. Costello, 141 F.3d 1151, 97-2433, 1998 WL 105768, at

*1 (2d Cir. Mar. 9, 1998) (table); Alston v. Ricks, 01 Civ. 09862 (GWG), 2003 WL 42144, at *6

(S.D.N.Y. Jan. 7, 2003) ("Federal courts uniformly hold that Rosario violations are not

cognizable in *habeas* review." (collecting case)); Johnson v. Filion, 232 F. Supp. 2d 98, 100

(S.D.N.Y. 2002). To the extent that Hernandez rests his claim upon Rosario, it must be denied.

### 2. Alternative **Brady** Claim

In the alternative, the Court construes Hernandez's claim as made pursuant to Brady, 373

U.S. 83. In Brady, the Supreme Court held "that the suppression by the prosecution of evidence

favorable to an accused upon request violates due process where the evidence is material either

to guilt or to punishment." Id. at 83, 87. Indeed, "[t]o the extent that [a] prosecutor knows of

material evidence favorable to the defendant in a criminal prosecution, the government has a due

process obligation to disclose that evidence to the defendant." United States v. Avellino, 136

F.3d 249, 255 (2d Cir. 1998). "There are three components of a true Brady violation: The

evidence at issue must be favorable to the accused, either because it is exculpatory, or because it

is impeaching; that evidence must have been suppressed by the State, either willfully or

inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82

(1999).

Evidence is "favorable" if it exculpates the defendant or could have been used to impeach

other evidence relied on by the government. United States v. Coppa, 267 F.3d 132, 135 (2d Cir.

2001). Evidence is "material" if there is a reasonable probability that the government's

suppression affected the case's outcome or where the suppressed evidence could reasonably be

taken to put the whole case in such a different light as to undermine confidence in the verdict.

Id.; see United States v. Bagley, 473 U.S. 667, 682 (1985) (finding evidence is material "if there

is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different"). Materiality is assessed in light of the totality of the trial

evidence. "Where the evidence against the defendant is ample or overwhelming, the withheld Brady material is less likely to be material than if the evidence of guilt is thin." United States v. Gil, 297 F.3d 93, 103 (2d Cir. 2002). A court must consider the net effect of suppressed evidence, not simply its item by item effect: cumulative materiality is the touchstone of the Brady analysis. Kyles v. Whitley, 514 U.S. 419, 421, 436 (1995). The petitioner must establish all three prongs of the test – favorable evidence, suppression, and materiality – before there is any Brady violation. Hughes v. Phillips, 457 F. Supp. 2d 343, 359 (S.D.N.Y. 2006) (citing Leka v. Portuondo, 257 F.3d 89 (2d Cir. 2001)).

### a.  Interview Notes

Hernandez argues that the government's failure to produce contemporaneous notes of witnesses' statements left his counsel with no way to compare witnesses' statements with their testimony at trial. The trial court's curative sanction of a permissive inference against the government because of its non-production of the detectives' notes, Hernandez argues, was not an adequate remedy and prejudiced him by altering the outcome of the trial.[2]

---

[2] The trial judge instructed the jury as follows:

> Further, in considering the testimony in this case, certain handwritten notes by Detective Negron of an interview with Mr. Pedro Tavares are lost or missing, as are certain notes by Detective Rosario of an interview with Ms. Abigail Cintron.

> Under the law, the defendant is entitled to receive a copy of any writing about the case made by a witness or any writing containing a statement by a witness about the case.

> The purpose of giving that writing to the defendant is to permit the defendant to see if there is anything in the writing that is inconsistent with the testimony of the witness at trial.

Applying the three prong <u>Brady</u> test, the notebooks would be "favorable" evidence insofar as they could have impeached Tavares. <u>See</u> <u>Bell v. Poole</u>, 00 Civ. 05214 (ARR), 2003 WL 21244625, at *14 (E.D.N.Y. 2003). The government seemingly had a duty to procure them from the detectives working on their behalf. But Hernandez has not established that the absence of these notes was material and, thus, that he was prejudiced. Accordingly, the denial of his claim was a reasonable application of <u>Brady</u>.

On federal *habeas* review, <u>Brady</u> materiality is assessed in light of the totality of evidence. Here, there was sufficient supporting evidence of Hernandez's guilt. The conviction was based on corroborating testimony from other eyewitnesses who were familiar with Hernandez and identified him as the person who killed de los Santos. Indeed, Tavares further testified that after killing de los Santos, Hernandez slashed him as well. The testifying detectives provided details of the investigation, and the medical examiner testified that de los Santos's death was caused by a neck wound, which was consistent with the broken bottle stabbing described by the witnesses. Thus, Hernandez cannot say that a better informed cross-examination would have placed the whole case in a different light which would have undermined confidence in the verdict or have "probably [led] to an acquittal." <u>Hughes</u>, 457 F. Supp. 2d at 364.

The government's failure to produce the notebooks does not rise to the level of constitutional harm cognizable on *habeas* review. <u>See</u> <u>Deans v. Ercole</u>, 09 Civ. 00056 (BMC), 2010 WL 1010743, at *9 (E.D.N.Y. Mar. 15, 2010) (finding that permissive inference charge was adequate remedy to any prejudice caused by alleged <u>Brady</u> violation and "petitioner made

---

From the failure of the People to preserve this written information you may, but are not required to, infer that the lost handwritten notes contained one or more statements of Mr. Tavares or Ms. Cintron which would have been at variance with or inconsistent with the witness, with the testimony of the witness at trial.

(T. at A-1486-87.)

no further showing of prejudice"); James v. Artus, 03 Civ. 07612 (AJP), 2005 WL 859245, at

*10 (S.D.N.Y. Apr. 15, 2005) (finding that, in light of totality of evidence and curative sanction

by trial judge, petitioner could not establish prejudice from loss of videotape).  Accordingly, the

Appellate Division's denial of Hernandez's Brady claim was not erroneous or an unreasonable

application of Brady and its progeny.

     In reply, Hernandez argues that his counsel could not effectively cross-examine certain

witnesses because he did not have access to the notes. But the Appellate Division found that the

trial court's sanction was "a sufficient remedy that prevented defendant from being prejudiced by

the loss of certain police interview notes." Hernandez, 915 N.Y.S.2d at 77. This finding was not

unreasonable: Hernandez's counsel was concerned with his ability to impeach witnesses without

the information allegedly contained in the notebooks, and in response the trial judge permitted

the jury to infer that the information would have impeached those witnesses.[3] The potential for

prejudice was further reduced because Hernandez's counsel still was able to cross-examine both

Cintron and Tavares extensively about their discussions with the detectives immediately after the

murder (the subject of the notes).

### b.  Federal Sentencing Transcripts

     Hernandez also argues that Tavares's federal guilty plea and sentencing transcripts were

never provided to his counsel, limiting his ability to cross-examine Tavares. This claim also must

be rejected because the Appellate Division's decision was based on a reasonable application of

Brady.

---

[3] Hernandez objects that this was an insufficient remedy, seemingly because it was a permissive and not
mandatory instruction. But in many ways this remedy is crafted to mirror the effects of a successful cross-
examination, which at best casts doubt on a witness's testimony but does compel a jury to discredit that
testimony. The trial judge's decision, similarly, allowed jurors to infer that testimony was inconsistent,
but did not compel that finding.

Applying the three-prong <u>Brady</u> test, it is clear that the plea and transcripts would be "favorable" evidence insofar as they could have been used to impeach Tavares. <u>See</u> <u>Bell</u>, 2003 WL 21244625, at *14. It is less clear that they were "material," and thus resulted in "prejudice." Even if Tavares's testimony was discredited, the government still had other eyewitness identifying Hernandez. But even assuming, *arguendo*, that the plea and transcript were material, a <u>Brady</u> violation is not established because the prosecution did not "suppress" the evidence.

A prosecutor's duty under <u>Brady</u> extends only to material under the government's control. "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in [the] case." <u>Strickler</u>, 527 U.S. at 281. But here the trial court found that the prosecution appeared to have no control over the information collected or generated in Tavares's federal case. And the Appellate Division found that "[Hernandez]'s arguments, including any constitutional claims, regarding the alleged nondisclosure of federal transcripts relating to a prosecution witness [were] without merit." <u>Hernandez</u>, 915 N.Y.S.2d at 77. Indeed, no evidence was presented that the state prosecutors possessed these files.

Giving existing case law, the Court cannot say that the state court's determination was objectively unreasonable. <u>See</u> <u>Avellino</u>, 136 F.3d at 255 ("[K]nowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor . . . .); <u>United States v. Locascio</u>, 6 F.3d 924, 948-50 (2d Cir. 1993) (refusing to impute to federal prosecutors knowledge of reports prepared by FBI agents uninvolved in investigation or trial of defendants-appellants); <u>Pina v. Henderson</u>, 752 F.2d 47, 49-50 (2d Cir. 1985) (holding that state prosecutors did not have constructive knowledge of exculpatory information in parole officer's report); <u>United States v. Quinn</u>, 445 F.2d 940, 944 (2d Cir. 1971) (finding "completely untenable" position that "knowledge of any part of the

government is equivalent to knowledge on the part of this prosecutor"); Hearns v. Artus, 08 Civ.

00192, 00218 (NGG), 2010 WL 2653380, at *2-3 (E.D.N.Y. June 23, 2010) (finding that

"prosecutor's [alleged] failure to obtain and disclose any exculpatory material in the files of the

federal government" did not violate Brady); Bell, 2003 WL 21244625, at *15-17 (finding that

co-arrestee's prisoner movement slip was not considered Brady material because it was

contained in city corrections department file and thus not under control and within possession of

the prosecution); cf. Ferreira v. United States, 350 F. Supp. 2d 550, 556 (S.D.N.Y. 2004) ("This

Court has been unable to find any case holding the federal [g]overnment in violation of Brady for

not turning over information to a state prosecutor in a state criminal proceeding with which the

[g]overnment has no direct involvement whatsoever.").

### D.  Right to Meaningful Appeal of Conviction

Finally, Hernandez argues that the Appellate Division deprived him of his right to a

meaningful appeal of his conviction by rejecting his request for missing pages 1-210 from his

trial's *voir dire* transcript. Specifically, he argues that those pages would have shown that

prospective jurors were not being sworn to answer truthfully, a prospective juror with strong

police affinity was selected, and that a juror whom Hernandez would have selected was

improvidently removed for cause by the trial court.

The Appellate Division rejected Hernandez's "claims made in both the main and *pro se*

briefs relating to allegedly missing or unavailable transcripts of jury selection." Hernandez, 915

N.Y.S.2d at 77. This was not an unreasonable application of clearly established federal law or an

unreasonable determination of the facts. Accordingly, Hernandez's final claim also must be

rejected.

The Supreme Court has addressed the issue of an indigent defendant's access to transcripts and has held that "once a State offers to criminal defendants the opportunity to appeal their cases, it must provide a trial transcript to an indigent defendant if the transcript is necessary to a decision on the merits of the appeal." Ake v. Oklahoma, 470 U.S. 68, 76 (1985); see Griffin v. Illinois, 351 U.S. 12 (1956). A trial court's records may be sufficiently complete to allow effective appellate review and conform to due process, however, even absent "a complete verbatim transcript." Mayer v. Chicago, 404 U.S. 189, 194 (1971); cf. Norvell v. Illinois, 373 U.S. 420, 424 (1963) (declining to extend Griffin to case where transcript was unavailable due to death of court reporter).

"In order to prevail on his *habeas* claim that the Appellate Division infringed upon his right to a fair appeal, [a petitioner] must show prejudice resulting from the missing or incomplete transcript." Santiago v. Coughlin, 96-2229, 107 F.3d 4, 1997 WL 32924, at *1 (2d Cir. Jan. 8, 1997) (table); see Bransford v. Brown, 806 F.2d 83, 86 (6th Cir. 1986); Mitchell v. Wyrick, 898 F.2d 940, 942 (8th Cir. 1983); Shire v. Costello, 07 Civ. 00285 (TJM), 2008 WL 2323379, at *7 (N.D.N.Y. June 2, 2008); McCray v. Barkley, 03 Civ. 04821 (DAB)(GWG), 2004 WL 32931, at *11-12 (S.D.N.Y. Jan. 7, 2004); see also United States ex rel. Cadogan v. LaVallee, 428 F.2d 165, 168 (2d Cir. 1970) (finding that "where, as here, it is clear that the transcript would not have been useful there is no reasonable ground for requiring that it be provided").

The focus is on whether petitioner raises meritorious appellate issues. A petitioner's mere "speculation that missing or incomplete portions of the transcript created actual prejudice is insufficient." Maxwell v. Conway, 06 Civ. 14203 (KMK)(LMS), 2010 WL 4273296, at *2 (S.D.N.Y. Oct. 28, 2010) (citations, brackets and internal quotation marks omitted); see Van

34

Stuyvesant v. Conway, 03 Civ. 03856 (LAK), 2007 WL 2584775, at *37 (S.D.N.Y. Sept. 7, 2007) (denying petition when petitioner's claim of prejudice was purely speculative).

Here, Hernandez presents three arguments for why he was denied a meaningful right of appeal, but does not raise any meritorious appellate issue that would establish prejudice. This is unsurprising, as even his Appellate Counsel wrote that "[b]ased on [his] review of the majority of the [over fifteen hundred pages of pre-trial and trial] transcripts produced, it would appear unlikely that there are going to be appellate issues in this phase of the case . . . ." (Resp. Decl. Ex. 1 ("Hernandez's Counseled Appellate Br.") at 19.)

Hernandez's first allegation that certain jurors were not sworn to tell the truth does not establish a federal claim without additional pleadings of constitutional violation. The jury truthfulness oath is an aspect of *voir dire*, which is solely a state issue. New York provides that prospective jurors will be "immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors." C.P.L § 270.15(1)(a). But *habeas* claims based on alleged violations of § 270.15(1)(a) are not federally cognizable. 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of *habeas corpus* . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions."); see McLeod v. Graham, 10 Civ. 03778 (BMC), 2010 WL 5125317, at *6 (E.D.N.Y. Dec. 9, 2010) (finding federal *habeas* court could not review jury truthfulness oath as it was question of state law); Gaskin v. Graham, 08 Civ. 01124 (JFB), 2009 WL 5214498, at *27 n.9 (W.D.N.Y. Dec. 30, 2009) (same); Pinkney v. Senkowski, 03 Civ. 04829 (LTS)(MHD), 2006 WL 3208595, at *6 (S.D.N.Y. Nov. 3, 2006) (same).

Hernandez does not show, beyond citing to the Constitution, how his allegation is more than a complaint that a state procedure was violated. Assuming, *arguendo*, that this is a constitutionally cognizable claim, Hernandez has not shown that any prejudice resulted from the state's alleged failure to swear the jurors. See, e.g., Maxwell, 2010 WL 4273296, at *3 (finding that, "absen[t] . . . any corroboration . . . of [p]etitioner's own version of the transcript, [the magistrate judge] was correct in rejecting [p]etitioner's speculative claim of errors in the transcript affecting [p]etitioner's appellate right"); Quinones v. N.Y.S. Div. of Parole, 07 Civ. 08633 (LBS), 2008 WL 2276540, at *5 (S.D.N.Y. June 2, 2008) (denying missing transcript claim because petitioner failed to show prejudice when his memorandum "suggest[ed] possible, not actual harm"); Pinkney, 2006 WL 3208595, at *6 (denying juror-oath claim when petitioner proffered no evidence that the jurors were improperly selected or biased); McCray, 2004 WL 32931, at *12 (rejecting transcript claim when petitioner "failed to present some modicum of evidence to support his claim that the missing portions of the transcript reflect reversible error" (citation and internal quotation marks omitted)).

Similarly, Hernandez has not shown any prejudice from the selection of a juror with alleged police affinity or the trial judge striking for cause a juror that Hernandez would have selected. See Guerrero v. Payant, 08 Civ. 03062 (JFB), 2010 WL 2545818, at *19-20 (E.D.N.Y. June 21, 2010) (finding, in ineffective assistance claim, that petitioner did not establish that juror was biased who "stated during *voir dire* that he may have some reservations about his ability to remain fair and impartial due to his employment as a police officer and was subsequently questioned at sidebar, where he expressed some doubts about his ability to be fair and impartial," and thus petitioner could not establish prejudice); see also Dory v. Comm'r of Corr. of New York, 865 F.2d 44, 45 (2d Cir. 1989) (*per curiam*) (holding that summary dismissal of a *habeas*

petition is warranted when the factual allegations are "patently frivolous or false" or "vague, conclusory or palpably incredible" (citations omitted)). Indeed, complaints like Hernandez's occur routinely in jury selections throughout New York State without prejudicing defendants.

In the alternative, Hernandez argues that "irregularities" in the process, alleged above, "rebut the presumption of regularity [in the record] and require remittal to reconstruct the record on these claims." (Resp. Decl. Ex. 2 ("Hernandez *Pro se* Appellate Br.") at 28.) As discussed, the Appellate Division rejected Hernandez's claim, Hernandez, 915 N.Y.S.2d at 77, and the alleged "irregularities" were not of constitutional import. The "Court[, moreover,] is aware of no 'clearly established' Supreme Court precedent, 28 U.S.C. § 2254(d), obligating a state court to hold a reconstruction hearing whenever portions of a trial transcript are lost or otherwise unavailable." McCray, 2004 WL 32931, at *11; accord Quinones, 2008 WL 2276540, at *5. Accordingly, Hernandez's alternative argument also is without merit.

Finally, in reply, Hernandez argues that the Appellate Division unreasonably applied Britt v. North Carolina, 404 U.S. 226 (1971), and Bounds v. Smith, 430 U.S. 817 (1977). These cases do not alter the Court's analysis.

In Britt, the Supreme Court identified two factors relevant to determining the need for a free transcript: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." 404 U.S. at 227. Here, Hernandez was not provided with the information in an alternative format, but Hernandez also made no meritorious argument to establish the transcript's value. Through Britt and its progeny, the Supreme Court sought to ensure "that the State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his

own way." <u>Mayer</u>, 404 U.S. at 195. But Hernandez was not faced with a disparity caused by poverty; the pages are unavailable, rather, because they were lost. A similar policy concern is not present. Accordingly, the state court's decision to reject this claim, even if erroneous, is not an objectively unreasonable application of <u>Britt</u>. <u>See</u> <u>Williams</u>, 529 U.S. at 411; <u>Besser</u>, 601 F.3d at 178.

In <u>Bounds</u>, the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. This case is inapposite. Hernandez makes no claim that his right to access the courts was impeded by any prison authority.

Accordingly, Hernandez's claim that he was denied his right to a meaningful appeal must fail.

## CONCLUSION

For these reasons, I recommend that Hernandez's petition for a writ of *habeas corpus* be DENIED as to all claims. Because Hernandez has not made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Lucidore v. N.Y.S. Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

*     *     *

38

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Nathan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge


DATED:      New York, New York
            July 26, 2013